**William C. COLEPAUGH, Appellant,**

v.

**Chesley H. LOONEY, Warden, United States Penitentiary, Leavenworth, Kansas, Appellee.**

**No. 5307.**

United States Court of Appeals
Tenth Circuit.

July 13, 1956.

Rehearing Denied Aug. 10, 1956.

Schuyler W. Jackson, Topeka, Kan. (Edward Rooney and Roy R. Bartlett, Topeka, Kan., on the brief), for appellant.

Lt. Colonel James W. Booth, Washington, D. C. (William C. Farmer, Topeka, Kan., and Selby S. Soward, Goodland, Kan., on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from an order of the District Court of Kansas, discharging a writ of habeas corpus which challenged the legality of appellant's confinement in the Federal Penitentiary at Levenworth, Kansas, under a judgment and sentence of a Military Commission, created under

authority of Presidential Proclamation No. 2561, dated July 2, 1942, 7 Fed.Reg. 5101. After hearing, but without specific findings of fact, the trial court concluded that the Military Commission had jurisdiction over prosecution of petitioner for the offenses charged, and that he was not denied any constitutional right.

In his Proclamation, the President, as Commander in Chief of the armed forces, declared that "all persons who are subjects, citizens or residents of any nation at war with the United States or who give obedience to or act under the direction of any such nation, and who during time of war enter or attempt to enter the United States * * * through coastal or boundary defenses, and are charged with committing or attempting or preparing to commit sabotage, espionage, hostile or warlike acts, or violations of the law of war, shall be subject to the law of war and to the jurisdiction of military tribunals." U.S.Code Cong. Service 1942, p. 901.

Thereafter, and on January 11, 1945, by executive order, the President charged the petitioner with violation of the law of war and directed the Commanding General of the Second Service Command to convene a military commission for trial of such offenses. The first charge specified: (1) that during November 1944, the petitioner and one Gimpel, acting for the German Reich, secretly passed through, in civilian dress, contrary to the law of war, the military and naval lines of the United States for the purpose of committing espionage, sabotage and other hostile acts; and (2) that the accused, during the month of November 1944, appeared and remained in civil dress, contrary to the law of war behind the military lines of the United States for the purpose of committing espionage, sabotage and other hostile acts. The second charge alleged the violation of the 82nd Article of War, 10 U.S.C.A. § 1554, and specified that during November and December 1944, the petitioner and one Gimpel, acting for the German Reich, were, in time of war, found lurking and acting as spies in and about the fortifications, posts and encampments of the armies of the United States and elsewhere, for the purpose of obtaining intelligence and communicating it to the German Reich. The third charge alleged a conspiracy to commit the above substantive offenses.

After conviction on all the charges, and review in accordance with the procedure prescribed in the Executive Order, the petitioner entered upon the service of his final sentence, and at the time of the application for this writ was in custody of the respondent.

In this proceedings, the petitioner contends that the Military Commission had no jurisdiction to try him of the charged offenses; that if he is guilty of any crime, it is cognizable only in the civil courts where his claimed constitutional rights to a jury trial and assistance of counsel is vouchsafed.

The respondent initially suggests that the court is without jurisdiction to inquire into the legality of the petitioner's trial by the Military Commission, but alternatively seeks to sustain the ruling of the trial court by showing that the violations charged against the petitioner, and of which he stands convicted, are violations of the law of war, clearly within the jurisdiction of the Military Commission; and that the petitioner was therefore lawfully and constitutionally tried and convicted of the charged offenses.

██ There is certainly nothing in the proclamation to preclude access to the courts for determining the applicability of the law of war to a particular case. Indeed, the Proclamation could not foreclose judicial consideration of the cause of restraint, for to do so would deny the supremacy of the Constitution and the rule of law under it as construed and expounded in the duly constituted courts of the land. In sum, it would subvert the rule of law to the rule of man. See Ex parte Quirin, 317 U.S. 1, 63 S.Ct. 1, 2, 87 L.Ed. 3; Ex parte Milligan, 4 Wall. 2, 18 L.Ed. 281; In re Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499. The courts have, however, traditionally recognized a body of interna-

tional common law known as the law of war, and surely since Ex parte Quirin, supra, there can be no doubt of the constitutional and legislative power of the president, as Commander in Chief of the armed forces, to invoke the law of war by appropriate proclamation; to define within constitutional limitations the various offenses against the law of war, and to establish military commissions with jurisdiction to try all persons charged with defined violations.

■ In the application of the law of war to various offenses thereunder, both the executive and judicial branches of the government have recognized a clear distinction between a lawful combatant subject to capture and detention as a prisoner of war, and an unlawful combatant, also subject to capture and detention, but in addition "subject to trial and punishment by military tribunals for acts which render their belligerency unlawful." i. e. Ex parte Quirin, supra, 317 U.S. at page 31, 63 S.Ct. at page 12. And, both the judicial and the executive authorities have recognized that "those who during time of war pass surreptitiously from enemy territory into our own, discarding their uniforms upon entry, for the commission of hostile acts involving destruction of life or property, have the status of unlawful combatants punishable as such by military commission." Id., 317 U.S. at page 35, 63 S.Ct. at page 14.

■ Judged by this concept of common law military justice, the charges and specifications before us clearly state an offense of unlawful belligerency, contrary to the established and judicially recognized law of war—an offense within the jurisdiction of the duly constituted Military Commission with power to try, decide and condemn. And, the petitioner's citizenship in the United States does not divest the Commission of jurisdiction over him, or confer upon him any constitutional rights not accorded any other belligerent under the laws of war. See Ex parte Quirin, supra, 317 U.S. at page 37, 63 S.Ct. at page 15.

■ With this, judicial inquiry should end. But, the petitioner earnestly insists that he could not have been an unlawful belligerent, subject to the Military Commission, because he did not pass through military and naval lines of the United States for the purpose of committing hostile acts. Of course this contention involves a matter of fact directly bearing upon his guilt or innocence, not within the scope of this inquiry. In any event, however, the undisputed facts are that petitioner secretly landed on the Coast of Maine from a German submarine, and entered the United States after having shed his military dress. He was carrying concealed side arms, forged credentials and other paraphernalia useful in his assigned mission of espionage. To say that landing on our shores in time of war from an enemy submarine was not passing through the naval and military lines is to say that our coastal waters and shores at the point of entry were undefended—an assumption directly contrary to the agreed facts.

■ Petitioner also argues that he could not have the status of an unlawful belligerent at the time he crossed our borders because, although he left the United States as an American citizen and traveled to Germany for hostile purposes, he recanted after arrival in the camp of the enemy, and thenceforth resolved to aid his country by exposing the mission which brought him back to his native land. It seems unnecessary to say that his intent is not on trial in this collateral proceedings. Conceding that his status upon reentry into the United States determines military jurisdiction over him as an unlawful combatant, it also is determinative of guilt or innocence, and the Commission is not deprived of jurisdiction because the factum of guilt also determines jurisdiction.

■ The petitioner also argues that the charges against him, at most, made out the constitutional offense of treason, triable in civil courts in accordance with the established procedure, including the right to a public trial by jury, with the effective assistance of counsel of his own

choosing. The short answer is, as pointed out in Ex parte Quirin, supra, 317 U.S. at page 38, 63 S.Ct. at page 15, that the essential elements of the two offenses are not the same. The other answer is that if the acts specified in the charge be treasonable and triable as such in the civil courts, he was not so charged. The jurisdiction of the civil courts was never invoked for treasonable offenses, and an accused has no constitutional right to choose the offense or the tribunal in which he will be tried. Cf. Stamphill v. United States, 10 Cir., 135 F.2d 177; Nolan v. United States, 8 Cir., 163 F.2d 768. It does not derogate from the supremacy of the civil law or the civil courts to accord to the military tribunal the full sweep of the jurisdiction vested in it under the Constitution and the laws thereunder.

Ex parte Quirin, supra, removes any doubt of the inapplicability of the Fifth or Sixth Amendments to trials before military commissions. See also In re Yamashita, supra; Johnson v. Eisentrager, 339 U.S. 763, 769, 70 S.Ct. 936, 94 L.Ed. 1255.

The judgment is affirmed.